Next case is William Grecia v. Samsung Electronics America 2019-10-19. Would you pronounce your name for us please? Matt Worzen for William Grecia. Please proceed. Good morning, your honors. May it please the court, we're here on two issues presented by William Grecia regarding the order reached below invalidating claim 21 of the 860 patent. The first issue involves an invalidity finding under paragraph 6 of section 112 with respect to claim 21. The second issue relates to an invalidity issue and an indefiniteness finding under paragraph 2 of section 112. There is an overarching error with respect to both holdings by the lower court below and that is that the lower court did not support his order with evidence, specifically evidence from the intrinsic record supporting first his holding that claim 21 does not communicate structure to one of ordinary skill in the art. If the court reviews the claim language of claim 21, if the court reviews the written description of the 860 patent, the structure showing precisely how this claimed computer product works is described. What about customization module? The claim says comprising a customization module. It doesn't anywhere, at least not until you get to dependent claims, you don't know what the customization module is doing. Why is that not a non-term analogous to means that should thus be understood as being a 112 six paragraph type limitation? The customization module is described in claim 21 with respect to customizing, for example, a verification token. Where would that be? Yeah, it begins with the receiving step, column 17, line 62, receiving the digital content access request, skipping down, being a read write request of metadata of the digital content, skipping down further, the request, and now we're still defining this request that's been received, the request comprising a verification token corresponding to the digital content. Now the verification token is going to be further defined. The verification token is handled by the user as a redeemable instrument wherein the token comprises at least one of a purchase permission, a rental permission, or a membership permission. These permissions, as the written description tells one of Skill in the Art, these are the  If we go into the written description, column 6, line 47, according to another embodiment of the present invention, the system further includes an access module. The access module allows the user to define the access rights. Examples of the access rights include, but are not limited to, purchasing rights, rental rights, and membership access rights. And now concluding my answer to Your Honor's question, also in column 6, the customization module is taught, skipping up to line 29 of column 6. According to an embodiment of the present invention, the customization module facilitates adding one or more of a banner, a logo, an image, an advertisement, a tagline, a header message, and a textual information to the user access panel of the encrypted digital media. Going back to claim 21, you can see that this is what the customization module is used for. And then skipping down to the dependent claim that Your Honor referred to, claim 23, the computer product, according to claim 21, wherein the customization module customizes the tag. Referring back up to the independent claim 21, the tag is one of the listed examples of what the purchase permission, the rental permission, or the membership permission could be. So, I think what you're saying is that the term customization module in claim 21 shouldn't be understood to be a nonce term because it's defined in the specification? Is that what your argument is? It's disclosed and taught in the claim language as well as the written description. And so, it's your position that the term customization module has structure, connotes structure. What is that structure? It's software, right? It's function? That's correct. And so, what the claim language is doing as well as the written description is describing the operation of the customization module. The claim language is telling you what the input is and what the output is. And so, I should look at that functional language to understand that the term customization module is defined by structure. I mean, 112-6 paragraph has a two-step process, right? The first step is to look at the term and see if it connotes some level of structure that allows it to say, okay, the patent owner did not intend this to be a 112-6 paragraph language. It has enough structure. It's just, I'm having a hard time seeing the structure here. So, maybe you can help me along here. Yes. Well, so this court has held in the Apple case, for example, that in the software arts, you're not going to find a lot of structure in tangible. The algorithm itself could be the structure. Correct. It is the structure. And so, this court looks to the operation of the claim as well as the support that you get in the specification. And so, in the language of the Apple case, you look to see how is this claim operating? What is the input? What is the output? And so, in the example before the court, and to go to Your Honor's question or confusion, the operation is taught. In the preamble, it recites, among other things, the customization module. So, this computer product includes the customization module. How is that used? What is the input to it? What is being customized? The tag that's set forth in Claim 2103. The tag would be one example, but more broadly, it would be any type of verification token. Can I ask you, do I understand correctly that the claim was found indefinite on three different grounds? Do you have to be successful on all three? Yes, Your Honor. That's correct. Do you want to talk for a minute about the metadata of digital content being one or more of a database or storage? Do I understand correctly that your interpretation of that term is that the metadata itself is a database or storage, or alternatively, it's information describing other data? Yes, that's correct. So, the lower court held that that language is indefinite, because it doesn't make sense that Mr. Grecia, the inventor, in the claim language is conflating metadata with a physical object, a database. And so, the claim language defines the metadata as a database or storage. The claim language also talks about the metadata, in fact, being a data store. That's not a typo in the claim? Because one could think that it could be the metadata of the digital content being in one or more of a database or storage, but that's not how the patent owner reads it, right? No, and it makes a lot of sense to one of ordinary skill in the art if you read the entire claim. So, receiving the digital content access request from the communications console, now the inventor tells you what that access request is. It's a read or write request of metadata of the digital content. In other words, it's a write request of a data store. Skipping down to the last action of claim 21, the computer product, writing the at least one verification token or the identification reference into said metadata. Again, this is a reference that one of ordinary skill in the art understands that Mr. Grecia is talking about a data store or a database or storage. That is all supported by numerous references. Not including it as part of the metadata, which is the data that describes other data. Instead, writing it into a data store. A data store, but it can be both. A database doesn't have to be a physical storage unit that you can touch and feel. A database is a collection of data. Metadata is data about data. Does some of it sit in a physical storage device? Yes, but it doesn't necessarily so. The written description... Doesn't the written description define metadata as data about data? Once in a generic reference to teach... To understand metadata and the uses of metadata is defined simply as to quote, describe other data, end quote. Correct. It's all information about certain items, content, period. So that's also my personal understanding of metadata. It's consistent with that in how this written description is defining metadata. So the concern is now you've introduced something into the claim that clashes with what appears to be a pretty straightforward definition in your written description. That is one instance, and the inventor prefaces that by it's defined simply. If you skip down then to line 32, in the invention... So now he's talking again about the invention. In the invention, the FBID and MAC address are written to the digital media asset metadata. They're written to... And as I said, if the specification is right with this language, column 8, the branding request is a read or write request of the metadata. Skipping down to line 29, electronic identification reference into the metadata at the step. Column 12, to save the complete list of a plurality of electronic identification references to storage or metadata. Skipping down column 12, for example, to retrieve the FBID from Facebook to cross reference with the FBID stored in the digital media metadata. The figures point to this definition as well. Figure 3, element 302, I believe. Counselor, you're well into your rebuttal time. If you would like to yield, we will hear the other side and give you two minutes of rebuttal. Sounds good. Thank you, Your Honor. Mr. Hawes. Thank you, Your Honor. Am I pleased to report? Michael Hawes for Samsung Electronics America. While we certainly agree with the lower court's rulings, finding the claim indefinite in many ways, this court can affirm simply based on the customization module. I would note that the arguments being made here were not preserved below. There's no challenge to the ruling that customization module renders claim 21 in the asserted dependent claims indefinite. There was even made or preserved below. Let me show you in the record where that is. Starting in the record on page appendix 23, that's the district court's claim construction opinion, where it describes what the party's positions are with respect to... At the bottom of 22, you'll see item number 7 is customization module. If you look at the bottom of the box on the right-hand side on page 23, you'll see that the position of the patentee was no construction necessary. In other words, the patentee said there is nothing beyond customization module that you need to know. There is no special structure in the claim. There is no special structure in the specification. Customization module, that's my position. Now let's turn and look at the arguments that were made in the briefs. And then we turn to appendix page 224. This is the initial brief by the patentee. And number 8, customization module. We have six lines, four of which are just a quotation of this court's Williamson case. The last two merely state, during the process of putting together the joint claim construction chart, defendants failed to support their allegation that 112.6 applies. Of course, defendants supported their allegation in their briefing, which was where it was required. Now let's turn... That is all we have there. No position as to any claim construction. Now let's turn to the reply. In the reply, starting on page appendix 240 and moving through page 243, the patentee set forth their reasons why section 112.6 does not apply. This was the claim construction portion of their brief going to 112.6. Customization module is never mentioned. There is no construction of that term. There is nothing here for this district court judge to look at as a position that customization module goes anywhere beyond those two words. Customization module. That's it. There was no argument below, as there is here on appeal, to say that customization module is defined by other terms in the claim, that it's defined by something specific in the specification, that there's anything that gives a structural meaning to customization module. Those words are all we have, and the patentee here on appeal doesn't have any challenge related to those words of the claim that shows that 112.6 doesn't apply. And in their briefing, their reply brief, they make no argument that if it does apply, that there's corresponding structure. So we have nothing on appeal that challenges the customization module as analyzed by the district court was properly 112.6 or that there was corresponding structure. And that alone supports affirming the summary judgment. Are there any... I want to make sure I answer any of your questions, but I also want to give back my time if the panel doesn't have any questions about the argument. Thank you very much, counsel. Mr. Warzen has a couple of minutes to rebut. I'll just speak to the point about waiver. Our position throughout this litigation has been that paragraph 6 does not apply. As I described the structure of a customization module, one of ordinary skill can find it in the claim language through the operation of the claim 21 computer product. And specifically, that customization module, customizing the access rights, as described further in the written description. That has been Mr. Grish's consistent position, which he maintains before this court. But without questions, I'll yield back my time. Thank you. The case is submitted. And that concludes this morning's argument. Thank you.